IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01769-REB-MJW

HEALTHCARE VENTURES, LLC, a Colorado limited liability company,
NEXUS OUTSOURCE GROUP, LLC, a Colorado limited liability company, and
ARI KRAUSZ,

Plaintiffs,

v.

ALEXANDER ORNSTEIN and
SILVER LEAF CONSULTING, INC., a New York corporation,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND FOR IMPROPER VENUE
(Docket No. 9)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 6)

issued by Judge Robert E. Blackburn on July 8, 2013.

**PLAINTIFFS' ALLEGATIONS**

Plaintiffs (hereinafter "plaintiffs" or "Krausz") allege the following in their

Complaint (Docket No. 1) against defendants (hereinafter "defendants" or "Ornstein").

This is a diversity action involving various business ventures.  Sometime in February

2009, plaintiffs were introduced to Defendant Ornstein by an individual named Pesach

Zuravin.  Ornstein represented himself to be a successful businessman who was

involved in a number of successful business enterprises.

2

In May 2009, Zuravin and Ornstein approached Plaintiff Krausz with a business proposition involving the outsourcing of legal services.  Eventually the business, named Nexus, was formed in Colorado.  Krausz and Zuravin funded Nexus while Orstein agreed to actively manage it in exchange for an $8,000.00 per month salary.

In the meantime, Ornstein started a second business in April 2009 named Silver Leaf.  In June 2009, Ornstein and Zuravin formed a new entity called White Lines to transfer this new business into.  The purpose of this entity was to provide bridge financing for the purchase and sale of telephone minutes.

By March 2010, Nexus closed up shop.  Krausz alleges that Nexus' lack of success was due to Ornstein failure to "discharge any of the duties and responsibilities he had undertaken when he agreed to actively manage Nexus."  Krausz alleges that Ornstein used his Nexus salary to fund his living expenses while he devoted the entirety of his efforts to Silver Leaf/White Lines.

At some point following the closure of Nexus, Ornstein persuaded Krausz to enter into the White Lines business.  Ornstein led Krausz to believe that Ornstein had been involved in White Lines for only a few months.  Eventually Krausz agreed to provide up to $10 million to White Lines for use in bridge financing. Once again, Ornstein was charged with day-to-day operations, including investigating the financial strength and stability of the escrow account involved in the business.  Krausz asserts Ornstein did not meet his duties as to the management of White Lines, and as a result of improper transactions on the part of the escrow company, Krausz lost approximately $5.8 million.

Plaintiffs have plead eleven claims in their Complaint (Docket No. 1), which are

labeled as follows : (1) nondisclosure/concealment; (2) inducement; (3) negligent

misrepresentation; (4) breach of fiduciary duty; (5) constructive trust; (6) conversion; (7)

unjust enrichment; (8) transfer; (9) alter ego; (10) indemnification; and (11) accounting.

## PENDING MOTION

Now before the court for a report and recommendation is Defendants' Motion to

Dismiss for Lack of Personal Jurisdiction and for Improper Venue (Docket No. 9).  The

court has carefully considered the Complaint (Docket No. 1), the subject motion (Docket

No. 9), plaintiffs' response (Docket No. 15), and defendants' reply (Docket No. 16).  In

addition, the court has taken judicial notice of the court's file, and has considered the

applicable Federal Rules of Civil Procedure and case law.  The court now being fully

informed makes the following findings of fact, conclusions of law, and

recommendations.

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties

(personal jurisdiction), so that the court's decision will bind them."  Gadlin v. Sybron Int'l

Corp., 222 F.3d 797, 799 (10th Cir. 2000) (quoting Ruhrgas AG v. Marathon Oil Co.,

526 U.S. 574, 577 (1999)).  "In determining whether a federal court has personal

jurisdiction over a defendant, the court must determine (1) whether the applicable

statute potentially confers jurisdiction by authorizing service of process on the defendant

and (2) whether the exercise of jurisdiction comports with due process."  Trujillo v.

Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation

omitted).

The plaintiff bears the burden of establishing personal jurisdiction over

defendants.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069

4

(10th Cir. 2008) (citation omitted).  "Where . . . there has been no evidentiary hearing,

and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and

other written material, the plaintiff need only make a prima facie showing that jurisdiction

exists."  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations

omitted).

## ANALYSIS

In Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for

Improper Venue (Docket No. 9), defendants argue that defendants do not have the

minimum contacts within Colorado required to confer personal jurisdiction over them

under either a general jurisdiction or a specific jurisdiction analysis.

## Personal Jurisdiction

In a diversity action, a federal court has personal jurisdiction over a defendant if

jurisdiction is consistent with the state's long-arm statute and if jurisdiction does not

violate the due process clause of the Fourteenth Amendment.  Benton v. Cameco

Corp., 375 F.3d 1070, 1074–75 (10th Cir. 2004).  The Colorado long-arm statute, Colo.

Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the

Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether

jurisdiction offends due process.  See Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d

1270, 1276 (10th Cir. 2005); Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1193

(Colo. 2005).

Personal jurisdiction comports with due process where a defendant has minimum

contacts with the forum state and where those contacts are such that jurisdiction does

not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

Wash., 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the

doctrines of specific jurisdiction or general jurisdiction.

**Specific Jurisdiction**

For specific jurisdiction, the defendant must have sufficient minimum contacts

with the forum state, and jurisdiction over the defendant cannot offend "traditional

notions of fair play and substantial justice." Asahi Metal Indus. Co., Ltd. v. Super. Ct. of

Cal., Solano Cnty., 480 U.S. 102, 113 (1987).  The minimum contacts must show that

"the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within

the forum State.'" Id. at 109 (quotations omitted).  The contacts with the forum must

make being sued there foreseeable so that the defendant could "reasonably anticipate"

the suit. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In support of their motion, defendants included an affidavit executed by Ornstein

(Docket No. 9-2).  Therein, Ornstein states the following: at all relevant times, he lived in

New York, id. at 1, ¶ 2; he has never conducted business in Colorado, id. at 1, ¶ 3; at all

relevant times, Silver Leaf had its principal place of business in New York and

conducted business in New York and Israel, and never in Colorado, id. at 1-2, ¶ 4-5; any

meetings between him and Krausz took place in New York or New Jersey, id. at 2, ¶ 11;

Nexus' office and employees were based in New York, New Jersey, and Israel, and

Nexus never conducted any business in Colorado, id. at 2, ¶ 13; White Lines' principal

place of business was in New York and conducted its business in New York, id. at 3, ¶

16; the escrow company conducts its business in Pennsylvania, id. at 3, ¶ 17; he has

never been to Colorado, owns no property in Colorado, has no business interests in

6

Colorado, and has no bank accounts in Colorado, id. at 3, ¶ 21; he received phone calls and emails from Krausz while Krausz was in Colorado, id. at 3, ¶ 23 and White Lines received wire transfers from a Colorado bank account, id. at 4, ¶ 25.

Plaintiffs do not submit any evidence directly to the contrary.  Rather, plaintiffs argue that emails, phone calls, and money transfers from Colorado are sufficient minimum contacts.  Plaintiffs further argue that because the communications were part of a tortious conduct that caused injury in Colorado, there are sufficient minimum contacts.

First, the court must determine if there is a genuine dispute as to whether Ornstein even knew Krausz was in Colorado.  The Tenth Circuit has noted that there is "a distinguishing characteristic of email that must be taken into account."  Shrader v. Biddinger, 633 F.3d 1235, 1247 (10th Cir. 2011).  "Although email is directed to particular recipients, email addresses typically do not reveal anything about the geographic location of the addressee."  Id. at 1248-49.  As such, "if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived."  Id. at 1249.  Telephone calls and money transfers may share similar characteristics to emails in this regard.

Here, Ornstein states he "had no idea that Krausz lived in Colorado, because he conducted business from his office in New Jersey."  Docket No. 9-2 at 2, ¶ 10.  Ornstein further states that he "exchanged many emails and had many telephone conversations with Krausz, [but] had not idea whether [Krausz] was in Colorado when he initiated or received those emails or calls."  Id. at 3, ¶ 23.  In addition, while Ornstein admits that he

received wire transfers from Krausz, he "had no idea what state the wires came from." Id. at 4, ¶ 25, 26.

Krausz's well-pleaded jurisdictional allegations can no longer be accepted as true since they have been controverted by the above statements contained Ornstein's affidavit, which is based on his personal knowledge.  See Shrader, 633 F.3d at 1248. "Thus absent an opposing showing by [Krausz], through specific averments, verified allegations, or other evidence sufficient to create a genuine issue of fact, [Ornstein's affidavit] carr[ies] the issue."  Id.

In his affidavit, Krausz states that Ornstein knew that he was in Colorado and that the money transfers were coming from there.  Docket No. 15-1 at 3, ¶ 13.  Krausz further states that Ornstein would frequently call Krausz's cell phone number and the office number, both of which start with area code 303.  Id. at 3, ¶ 13.  Krausz also notes that Ornstein was aware Krausz was in Colorado during phone conversations and Ornstein would ask about business acquaintances they both knew in Colorado and family members located in Colorado.  Id. at 3, ¶ 15.  Krausz also points to Exhibit 3 to his affidavit which shows a money transfer with Colorado business and bank addresses listed.  Finally, Exhibit 4 to his affidavit is an email from Ornstein asking for Krausz's mailing address.  The address supplied to Ornstein is a Colorado address.

Based on Krausz's affidavit, the court finds that there is a genuine issue of fact as to Ornstein's knowledge that Krausz was in Colorado.  As such, the court must proceed under the assumption that Ornstein had such knowledge.

"It is well-established that phones calls and letters are not *necessarily* sufficient in themselves to establish minimum contacts."  Id. at 1079 (emphasis added).  In addition,

in the Tenth Circuit, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1079 (10th Cir. 1995).  The court, therefore, must determine whether the allegations of tortious conduct, in conjunction with the emails, phones calls, and money transfers, are sufficient minimum contacts.

No specific threshold as to the frequency and nature of such communications exists to guide the court's determination and, not surprisingly, courts in this jurisdiction have come to various conclusions when faced with similar circumstances.  However, the overarching focus in analyzing such contacts under the specific jurisdiction framework "is whether they represent an effort by the defendant to purposefully avail[] itself of the privilege of conducting activities within the forum State.'" <u>Rambo v. Am. Southern Ins. Co.</u>, 839 F.2d 1415, 1419 (10th Cir. 1988) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)).  "A defendant's contacts are sufficient if 'the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1076 (10th Cir. 2004) (quoting <u>Hanson</u>, 357 F.3d at 253).

Here, the court cannot find that the communications represent an effort by Ornstein to avail himself of the privileges of conducting activities within Colorado. Rather, Ornstein was simply communicating with a business associate who happened to reside in Colorado.  Krausz could have resided in any number of other states, and

nothing substantive would have changed in regard to their business activities.

While it is true that Nexus was formed as a Colorado limited liability company, there is no indication that Ornstein somehow directed Krausz to specifically form Nexus in Colorado so that Ornstein could avail himself of the privilege of conducting activities within Colorado.  Indeed, the formation of Nexus in Colorado can hardly be considered a relevant "contact" since it was not an action that Ornstein *himself* took.  Rather, the relevant contacts are communications to Krausz while Krausz happened to be located in Colorado.  There is no indication that Ornstein undertook those contacts to avail himself of the privileges of conducting activities within Colorado.  Indeed, it is clear that if Krausz had been in some other state while these contacts took place, Ornstein likely would not have know, and certainly would not have cared.  See Olsen v. Mapes, 139 Fed. Appx. 54, 57 (10th Cir. 2005) (noting that it was "mere fortuity" that the plaintiff happened to live in New Mexico when the contacts occurred).  Accordingly, the court finds that Krausz has failed to demonstrate sufficient minimum contacts with Colorado that would warrant specific jurisdiction over Ornstein.

**General Jurisdiction**

General jurisdiction may exist in the absence of specific jurisdiction.  General jurisdiction requires that a defendant have contacts with the forum "so continuous and systematic as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011) (quotations omitted); see also Trujillo v. Williams, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (general jurisdiction requires "'continuous and systematic' general business contacts with the forum state" (quoting Helicopteros Nacionales v. Hall, 466 U.S. 408,

10

415 (1984))).  Unlike for specific jurisdiction, the litigation need not arise from the defendant's activities in the forum.  Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd., 703 F.3d 488, 493 (10th Cir. 2012).  However, "because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test."  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

Here, as detailed above, Ornstein's contacts with Colorado consist of emails, telephone calls, and money transfers related to the subject business ventures; there are no additional contacts unrelated to the subject business ventures.  For example, Ornstein does not own property, have a bank account in the state, or has even visited the state.  Accordingly, the court cannot find that Ornstein's contacts with Colorado were so continuous and systematic as to render Ornstein essentially at home in Colorado.  See Dagen v. Book, 249 F.R.D. 362, 366-67 (D. Colo. 2008) (adopted recommendation finding that telephone calls, faxes, and emails were not sufficient to establish general jurisdiction); Melea, Ltd. v. Engel, No. 05-cv-00658-PSF-PAC, 2006 2683741, at *6 (D. Colo. Sept. 18, 2006) (finding that telephones calls, other correspondence, and two visits to the state were not sufficient to establish general jurisdiction)  As such, the court finds that Krausz has failed to demonstrate sufficient contacts with Colorado that would warrant general jurisdiction over Ornstein.

Because the court finds that neither specific nor general jurisdiction have been established, the court finds that plaintiffs have failed to make a prima face showing personal jurisdiction over defendants.  Accordingly, this matter should be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

11

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss for Lack of Personal

Jurisdiction and for Improper Venue (Docket No. 9) be **GRANTED** and this matter be

dismissed without prejudice for lack of personal jurisdiction.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives de novo review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse,**

**91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  November 7, 2013                    s/ Michael J. Watanabe
        Denver, Colorado                    Michael J. Watanabe
                                             United States Magistrate Judge